Timothy R. SHERBERT, Appellee,

v.

ALCAN ALUMINUM CORPORATION, Appellant.

No. 95–1219.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 11, 1995.

Decided Oct. 4, 1995.

Lawrence A. Salibra, Cleveland, Ohio, argued (Lynn H. Sturges, on the brief), for appellant.

Counsel who presented argument on behalf of the appellee was George Michael Fatall, Kansas City, Missouri, argued, for appellee.

Before WOLLMAN, LOKEN, and MORRIS SHEPPARD ARNOLD, Circuit Judges.

WOLLMAN, Circuit Judge.

In this Missouri diversity action, Alcan Aluminum Corporation (Alcan) appeals the district court's [1] denial of its posttrial motion for judgment as a matter of law or a new trial, filed after a jury found in favor of Timothy R. Sherbert on his negligence claim.

Alcan appeals on the grounds that: 1) appellee offered no expert testimony to establish a failure to conform to the standard of care required in forklift operation and 2) the district court wrongly refused to instruct the jury on assumption of risk. We affirm.

The underlying accident occurred on December 5, 1988, at Alcan's metal goods division in North Kansas City, Missouri. Sherbert, a long haul truck driver employed by Roadrunner Express, a shipping company based in Albuquerque, New Mexico, delivered a shipment of aluminum to the Alcan facility. After completing the delivery, Sherbert asked Robert Edwards, an Alcan employee with eleven years of experience operating forklifts, for assistance to reposition a stack of three pallets of aluminum remaining in the rear of Sherbert's trailer. Edwards agreed to move the stack with his forklift. While Edwards was attempting to lift the three stacked pallets, the top pallet slipped onto the ground and struck and broke Sherbert's leg. Sherbert sued Alcan to recover damages resulting from his broken leg.

At the time of the accident, Edwards was operating a forklift designed to lift 12,000 pounds when the center of the load is positioned twenty-four inches from the back of the forks. The aluminum stack weighed no more than 6,000 pounds. The aluminum was delivered in pallets with two wooden boards called "runners" set in and attached to the underside of the pallets. These runners run lengthwise and provide additional support to lift the aluminum, which is packaged in slick waterproof paper.

The lifting process is straightforward. The forklift operator first decides how many pallets to lift in one load. These pallets are then picked up from the side by lifting the edge enough to place a wooden block under the first runner, and then maneuvering the fork underneath until it reaches the second runner. This blocking procedure may then be repeated in order to get the pallets under the second runner. Once the pallets are safely positioned on the forks, the load can be lifted.

---

1. The Honorable Fernando J. Gaitan, Jr., United States District Judge for the Western District of Missouri.

In his attempt to help Sherbert, Edwards followed this general procedure. After deciding to lift the three pallets in one load, he raised the edge of the stack, and Sherbert placed a block under the first runner. Edwards then moved the forklift underneath until the forks hit the second runner. At this point, with the load partially onto the forks, Edwards tipped the forks back in an attempt to lift the pallets, but the weight was distributed too far out on the end of the forks, and the back wheels started to raise up. Edwards decided that to balance the load on the forklift he needed to advance the forks under the second runner.

Edwards then asked Sherbert to assist him by placing a block under the second runner. Sherbert's first attempt failed. When Edwards lifted the pallets a second time, the top pallet slipped off the stack and hit Sherbert, who was trapped between the sliding pallet and the wall.

Following the accident, Edwards filed a routine post-accident report. In that report, he attributed fault for the accident to his choice to move three pallets at once while Sherbert was standing in an unsafe position.

Sherbert sued Alcan in negligence to recover for his injuries. The jury returned a $45,000 verdict in favor of Sherbert, finding that Sherbert was five percent negligent and Alcan was ninety-five percent negligent. As indicated earlier, the district court denied Alcan's motion for judgment as a matter of law or, in the alternative, a new trial.

## I. Expert Testimony

In its motion for judgment as a matter of law, Alcan argued that Sherbert failed to present a submissible case of negligence. Specifically, Alcan argued that Sherbert failed to introduce expert testimony establishing that Edwards breached the standard of care applicable to forklift operators. According to Alcan, such evidence was indispensable because the proper operation of a forklift was not a matter within the common knowledge of lay jurors.

■ We review the district court's denial of the motion for judgment as a matter of law under the same standard used by the district court. *Morgan v. Arkansas Gazette*, 897 F.2d 945, 948 (8th Cir.1990). We must consider the evidence in the light most favorable to the prevailing party, and affirm the denial of the motion if reasonable persons could differ as to the conclusions to be drawn from that evidence. *Id.* Our task is to apply this standard of review to determine if Sherbert produced sufficient evidence to submit the standard of care issue to the jury.

■ The law of Missouri governs the standard of care in this diversity action. *See Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Under Missouri law, after the court establishes the particular standard of care applicable under a given set of facts, the jury then determines whether a defendant's conduct falls short of that standard. *Harris v. Niehaus*, 857 S.W.2d 222, 225 (Mo.1993) (en banc). Expert testimony is required to assist the jury in making this determination only if the subject matter is outside the knowledge or experience of lay people. *Jake C. Byers, Inc. v. J.B.C. Investments*, 834 S.W.2d 806, 818 (Mo. Ct.App.1992).

■ The operation of a forklift involves simple principles of balance well within the common knowledge of lay jurors. The jury could have based liability on at least two theories of negligence. First, the jury could have found that Edwards was negligent in lifting three aluminum pallets in one load. In the alternative, the jury could have found that Edwards was negligent in lifting a stacked load of slick aluminum while Sherbert stood in front of the load.

Neither theory requires expert testimony. In support of the first theory, the jury heard testimony from Sherbert that Edwards had previously lifted pallets one or two at a time. In addition, Edwards testified that he attributed fault for the accident to his attempt to lift too many pallets at once while Sherbert was standing in an unsafe position. In support of the second theory, jurors could infer that tilting a 6,000 pound load of slick aluminum while a person is standing in front of that load is not reasonable behavior. The ability to draw these conclusions is well within the common knowledge of jurors.

Alcan argues that expert testimony was required to explain to the jury the interrelationship of complex factors such as incline, friction and acceleration rates. The average forklift operator, however, does not make judgments based on these technical calculations, and the jury need not understand them to determine whether Edwards was negligent. One does not have to be a physicist to understand that tilting a 6,000 pound pile of slippery material, precariously balanced on the end of a forklift, involves the risk that some of the material will fall. Aided by the testimony of Sherbert and Edwards, the jury should have been capable of determining whether Edwards was negligent.

■ Moreover, even if expert testimony was required to assist the jury, Edwards, a man with eleven years of experience operating forklifts, was certainly qualified to render that testimony. With the aid of pictures of forklifts and stacked pallets, Edwards provided a detailed description of the accident. Edwards' testimony should have alleviated any potential difficulty the jurors had in determining whether he was negligent. Thus, the district court properly denied Alcan's motion for judgment as a matter of law.

## II. Assumption of the Risk

■ Alcan next argues for a new trial on the basis that the district court erred in refusing to instruct the jury on assumption of risk. We review a district court's jury instructions for abuse of discretion. *Hoselton v. Metz Baking Co.*, 48 F.3d 1056, 1062 (8th Cir.1995). Upon review, we must determine "whether the instructions, taken as a whole and viewed in light of the evidence and applicable law, fairly and adequately submitted the issues in the case to the jury." *Jones v. Board of Police Comm'rs*, 844 F.2d 500, 504 (8th Cir.1988), *cert. denied*, 490 U.S. 1092, 109 S.Ct. 2434, 104 L.Ed.2d 990 (1989).

■ Missouri law governs the substantive correctness of jury instructions. In 1983, Missouri adopted the Uniform Comparative Act, establishing a comparative negligence regime to govern Missouri negligence cases. *Gustafson v. Benda*, 661 S.W.2d 11 (Mo.1983) (en banc). Since adopting this regime, Missouri courts have cast doubt on whether as-

sumption of risk remains a viable defense in general negligence cases. The post-*Gustafson* cases applying assumption of risk involve either athletic competitions, reckless conduct, or both. *See Sheppard v. Midway R–1 School District*, 904 S.W.2d 257 (Mo.Ct.App. 1995) (long-jump competition); *Martin v. Buzan*, 857 S.W.2d 366 (Mo.Ct.App.1993) (softball game) (citing, *Ross v. Clouser*, 637 S.W.2d 11 (Mo.1982) (en banc), which held that assumption of risk is a defense to a charge of reckless conduct). The holdings are narrow, and the courts' language implies that the defense may be limited to these types of cases. *See e.g., Martin*, 857 S.W.2d at 368 ("Several comparative fault jurisdictions have continued to apply assumption of risk as a defense in actions for injuries sustained while participating in athletic competition.").

Moreover, those cases that do allow an assumption of risk defense emphasize its narrowness. For a court to give an assumption of risk instruction, "there must be facts from which a jury can find that the plaintiff intelligently consented to assume the risk and knew the extent of the danger." *Eide v. Midstate Oil Co.*, 895 S.W.2d 35, 40 (Mo.Ct. App.1995); *see also, Gamble v. Bost*, 901 S.W.2d 182, 187 (Mo.Ct.App.1995). Sherbert testified that he had never before seen pallets slip and that it never crossed his mind that the pallets might slip this time. Given this uncontradicted testimony, the district court acted well within its broad discretion in refusing to instruct on assumption of risk.

## III. Conclusion

Because we find that expert testimony was not necessary to establish a breach of the standard of care for forklift operation and that the district court was not required to instruct the jury on assumption of risk, we affirm.