United States Court of Appeals

FOR THE EIGHTH CIRCUIT

_____

No. 96-2194
_____

Cheryl A. Davis,                           *
                                           *
            Appellee,                      *
                                           *
Thomas R. Davis,                           *   Appeal from the United States
                                           *   District Court for the Northern
            Plaintiff,                     *   District of Iowa.
                                           *
      v.                                   *
                                           *
City of Sioux City,                        *
                                           *
            Appellant.                     *
                        _____

Submitted: January 16, 1997

Filed:  June 18, 1997
                        _____

Before RICHARD S. ARNOLD, Chief Judge, ROSS, and BEAM, Circuit Judges.
                        _____

BEAM, Circuit Judge.

      The City of Sioux City appeals from a jury verdict in favor of Cheryl Davis on her claims of retaliation and hostile environment sexual harassment.  We affirm in part and reverse in part.

# I. BACKGROUND

Cheryl Davis began working for the City of Sioux City (City) in the City Clerk's Office in 1977. In 1984, Davis became a Deputy Clerk. From 1982 to 1992, Bill Gross was the City Clerk and Davis's supervisor. Gross, in turn, reported directly to the City Council, which had sole responsibility for hiring, firing and disciplining him.

During the first nine years that Davis worked under Gross, Davis claims Gross engaged in some inappropriate behavior toward her. However, Davis did not feel that this behavior was sufficiently egregious to report. In January 1991, however, Gross suffered a heart attack. Following his return from medical leave, and especially in late 1991 and early 1992, Gross's inappropriate behavior toward Davis escalated. Such conduct included, but was not limited to: (1) spreading rumors that Davis was having extra-marital affairs; (2) following Davis to the restroom to make sure she was using the restroom and not talking to men instead; (3) calling the head of another department to see whether Davis was on the phone with men from that department; and (4) commenting that Davis's work attire was inappropriate, e.g., that her skirts were too short. Although Davis discussed this behavior with Gross, the situation did not improve and the behavior did not cease.

Pursuant to the City's sexual harassment policy that had been in effect since 1988, Davis made a formal complaint about Gross's behavior on February 12, 1992. In the course of an investigation by city personnel, Gross denied Davis's allegations. Later, the investigators' findings were submitted to the City Council. Davis was neither apprised of the investigation nor of the substance of the report. After discussing the report on March 16, 1992, the City Council voted to suspend Gross for one day and put a letter in his file. Davis was not informed of this action at the time.

On the morning of March 25, 1992, Davis submitted a letter of resignation and left her office. That same day, a letter was prepared by the City Council notifying

Davis about Gross's one-day suspension. Later that afternoon, Davis met with an attorney for the City and informed him that she had obtained some of Gross's personal notes which suggested Gross had lied to investigators. On March 30, 1992, these notes were presented to the City Council. On review of this evidence, the City Council negotiated and concluded a severance agreement with Gross, who left city employment on April 3, 1992.

Davis was then asked to withdraw her resignation. Due to reorganization of city offices, however, Davis's prior Deputy Clerk position had been eliminated. Davis was offered a new job as a property officer in the Community Development Department. The beginning annual salary at this new position was slightly more than Davis's previous salary. However, Davis testified that the opportunities for pay increases and job advancement were fewer than in her prior role and that the new position was not a supervisory one, in contrast to her Deputy Clerk responsibilities. Additionally, Davis claims the new position ended within two years unless she successfully completed a civil service exam. Davis accepted the appointment, however, and continues to work in that capacity.

In June 1994, Davis filed sexual harassment and retaliation claims against the City and several of its officers.[1] Davis claimed that Gross's behavior had created a hostile work environment and that her transfer to a new position was in retaliation for complaining about Gross's behavior. The claims proceeded to trial by jury. The jury rendered a verdict in favor of Davis on both claims. It awarded damages for back pay,

---

[1]The individual officers were later dismissed from suit. Additionally, several other claims originally filed by Davis and her husband were dismissed. Davis's hostile environment sexual harassment and retaliation claims were the only claims that proceeded to trial and are the only claims at issue in this appeal.

front pay, emotional distress and medical expenses.[2]  The district court then entered final judgment for Davis in the amount of $102,440.00, with interest and costs.  The City appeals.

## II.  DISCUSSION

### A.  Hostile Environment Jury Instruction

On appeal, the City argues that the district court erred in instructing the jury on the hostile environment sexual harassment claim because the instruction allowed the jury to find for Davis upon a mere finding of agency, without regard to whether Gross's actions were properly imputed to the City.[3]  The City argues that the district court

---

[2]On the sexual harassment claim, the jury awarded $4,100 for back pay, $4,090 for medical expenses and $20,000 for emotional distress damages.  On the retaliation claim, the jury awarded $4,250 for back pay, $40,000 for front pay and $30,000 for emotional distress damages.

[3]The jury was instructed that its verdict must be for the plaintiff if the following elements were met: (1) plaintiff was subjected to sexually offensive conduct; (2) such conduct was on account of plaintiff's gender; (3) such conduct was sufficiently severe or pervasive so that a reasonable woman would find the work environment to be hostile; (4) plaintiff believed her work environment to be hostile; and (5) "The alleged harasser, Bill Gross, who was the supervisor of the plaintiff, was an agent of the City of Sioux City as described in the next instruction."  The following explanatory instruction was then provided:

> With respect to the <u>fifth</u> element of Instruction 9, which is whether or not Bill Gross, who was a supervisor of the plaintiff, was an agent of the City of Sioux City, you should apply the following principles.  Defendant City of Sioux City is a corporation.  A corporation may act only through natural persons as its agents or employees and, in general, any agent or employee of a corporation may bind the corporation by his or her actions done and statements made while acting within the scope of his or her

-4-

should have instructed the jury that liability was only imputed to the City if the City knew or should have known of Gross's harassment and failed to take proper remedial action. In response, Davis argues that by virtue of Gross's supervisory position, liability for the harassment should be imputed to the City, regardless of the City's actual or constructive knowledge of the harassment.

We review the district court's jury instructions for an abuse of discretion. Sherbert v. Alcan Aluminum Corp., 66 F.3d 965, 968 (8th Cir. 1995). Our review must consider whether, when taken as a whole, the instructions fairly and adequately submitted the issues to the jury. Id. In this case, we find they did not.[4]

---

authority as delegated to him or her by the corporation or within the scope of his or her duties as an employee of the corporation. An employee acting outside his or her delegated authority or outside the scope of his or her duties of employment may not bind the corporation. However, even though an act is forbidden, such as sexual harassment in this case, it may still be within the scope of employment so as to impose liability on the corporation. In deciding whether the act complained of was within the scope of employment you should consider such factors as where the acts took place and all of the other evidence before you.

Addendum to Appellant's Brief at 6-7.

[4]We recognize those cases cited by the dissent which impute liability to an employer for a supervisor's hostile environment sexual harassment of an employee, regardless of the employer's actual or constructive knowledge of the harassment. We decline to follow such reasoning in this case because there is contrary binding precedent in this circuit. Furthermore, imputation of liability to the City in this case, without regard to City decision makers' knowledge of Gross's acts, would be inappropriate. As the dissent makes clear, the knowledge requirement may be dropped where "someone at the **decision-making level** in the **corporate hierarchy** has committed the wrong." Infra at 13 (quoting Hunter v. Allis-Chalmers Corp., 797 F.2d 1417, 1422 (7th Cir. 1986) (emphasis added). On this record, there is insufficient evidence that Gross was such a person.

In the situation of quid pro quo sexual harassment by a supervisor, where the harassment results in a tangible detriment to the subordinate employee, liability is imputed to the employer. Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 76 (1986) (Marshall, J., concurring in judgment). In situations such as the present case alleging hostile environment sexual harassment by a supervisor, however, the standard for imputed liability is less clear. See, e.g., Meritor, 477 U.S. at 72 (declining to issue a definitive rule on employer liability in such cases and instructing courts to look to agency principles for the appropriate standard); see also Gary v. Long, 59 F.3d 1391, 1398 (D.C. Cir.) (if employer has policy in place which prohibits sexual harassment and puts employee on notice that supervisor lacks authority to engage in such conduct, employer is insulated from liability for supervisor's actions), cert. denied, 116 S. Ct. 569 (1995); Karibian v. Columbia Univ., 14 F.3d 773, 780 (2d Cir. 1994) (employer is liable for supervisor's harassment when supervisor uses his actual or apparent authority to further the harassment and noting differences between high and low supervisors in this regard); Sauers v. Salt Lake County, 1 F.3d 1122, 1125 (10th Cir. 1993) (if employer gives supervisor significant control over plaintiff's hiring, firing and

---

Although the record is replete with examples of the decision-making responsibility of the City Council, little is said of Gross's responsibilities. The City Council ordered an investigation into the harassment; forced Gross to resign; and transferred Davis to a new position. These are but a few examples of the fact that the City Council, not Gross, was vested with control over the City Clerk's Office. Indeed, after Gross resigned from the City Clerk position, the entire City Clerk Office was relegated to being one of many departments under the supervision of the City Manager. Such reorganization further demonstrates the relative powers of the City Clerk and the City Council.

Therefore, notice to the City's decision-making hierarchy, whether actual or constructive, of Gross's actions should be required. Any other rule would render the City's attempts to prevent sexual harassment, such as its anti-harassment policy and training, a waste of time. Even if the rule urged by the dissent were appropriate for some cases, this is not such a case.

-6-

employment conditions, employer is liable for supervisor's actions without regard to knowledge or recklessness). In our circuit, we have applied the knew or should have known standard to supervisor-induced hostile environment sexual harassment claims. See, e.g., Smith v. St. Louis Univ., 109 F.3d 1261, 1264 (8th Cir. 1997); Kinman v. Omaha Pub. Sch. Dist., 94 F.3d 463, 469 (8th Cir. 1996); Callanan v. Runyun, 75 F.3d 1293, 1296 (8th Cir. 1996); Burns v. McGregor Elec. Indus., Inc., 955 F.2d 559, 564 (8th Cir. 1992). Therefore, we reverse and remand for a new trial on Davis's hostile environment claim.

In Smith v. St. Louis University, we used the knew or should have known standard in a case of supervisor-caused hostile environment sexual harassment. Smith, 109 F.3d at 1264. In Smith, an anesthesiology resident alleged she was harassed by the chairman of the anesthesiology department at the university hospital. In reversing the district court's grant of summary judgment for the university, we recited the prima facie elements of a hostile environment sexual harassment claim.[5] One of those elements is that the employer knew or should have known of the harassment yet failed to take proper remedial action. Despite the fact that the plaintiff's supervisor had been the source of the harassment, we did not automatically impute liability to the hospital or alter the knew or should have known language typically used in hostile environment cases.

The Smith case is consistent with our other decisions. See, e.g., Callanan v. Runyun, 75 F.3d at 1296 (using knew or should have known standard where United States Postal Service employee sued the United States Postal Service for hostile

---

[5]The elements include: (1) plaintiff is in a protected group; (2) plaintiff was subjected to unwelcome harassment; (3) the harassment was based on plaintiff's sex; (4) the harassment affected a term, condition, or privilege of plaintiff's employment; and (5) the employer knew or should have known of the harassment and failed to take proper remedial action. Hall v. Gus Constr. Co., 842 F.2d 1010, 1013 (8th Cir. 1988).

environment sexual harassment caused mainly by her supervisors); <u>Burns v. McGregor Elec. Indus.</u>, 955 F.2d at 564 (using knew or should have known standard where plant employee sued employer for hostile environment sexual harassment caused by the president/owner of the company).

Finally, we note the case of <u>Kinman v. Omaha Public School District</u>, 94 F.3d at 469. In <u>Kinman</u>, we were asked to determine the appropriate standard for a school district's imputed liability under Title IX for a teacher's hostile environment sexual harassment of a student. <u>Id.</u> at 467. Borrowing what we believed to be the appropriate institutional liability standards from Title VII cases dealing with hostile environment sexual harassment, we used the knew or should have known language.[6] We stated:

> The Supreme Court in <u>Meritor Savings</u> declined to set out a generally applicable standard of liability for employers under Title VII. Instead, the Court suggested that common law agency principles should guide courts in determining employer liability on a case-by-case basis. For example, when a supervisor uses the power delegated specifically to him by his

---

[6]The dissent uses the <u>Kinman</u> case in support of its position. Omitted from its quoted <u>Kinman</u> text, however, is important prefatory language which explains the <u>Kinman</u> court's reasoning. After quoting <u>Kinman</u> for the proposition that "when a supervisor uses the power delegated specifically to him by his employer to discriminate on the basis of sex, that employee's actions should be imputed to the employer," the dissent then concedes, "[t]he [Kinman] opinion does add that "in a hostile environment sexual harassment case, 'the usual basis for a finding of agency will often disappear.'" <u>Infra</u> at 12 (quoting <u>Kinman</u>, 94 F.3d at 469). In the <u>Kinman</u> opinion, however, the second quoted sentence begins with the important phrase, "On the other hand." <u>Kinman</u>, 94 F.3d at 469. The use of this phrase makes clear that the initial language refers to a quid pro quo sexual harassment situation. The "On the other hand" language clearly signals that the following language, unlike the prior language, refers to a hostile environment claim. Consequently, we find the <u>Kinman</u> case supportive of, if not determinative of, our decision today.

employer to discriminate on the basis of sex, that employee's actions should be imputed to the employer. On the other hand, in a hostile environment sexual harassment case, the usual basis for a finding of agency will often disappear. <u>In such cases, the employer should not be held liable unless the employer itself has engaged in some degree of culpable behavior. For example, the employer could be held liable if it knew or should have known of the harassment and failed to take appropriate remedial action</u>.

<u>Id.</u> at 469 (citations and quotations omitted) (emphasis added).[7]

Therefore, we find that the district court abused its discretion in not instructing the jury on the knew or should have known employer liability standard. Consequently, we reverse and remand for a new trial on this issue. On retrial, the jury may well reach the same verdict, but must do so after being instructed on the appropriate liability standards.

## B. Retaliation Claim

To prove unlawful retaliation, Davis must show that she complained of discrimination, the City took adverse action against her, and the adverse action was causally related to her complaint. <u>Marzec v. Marsh</u>, 990 F.2d 393, 396 (8th Cir. 1993). At trial, Davis argued that her previous position as Deputy Clerk was eliminated, and her transfer to the less desirable property officer position was effectuated, in retaliation for filing her complaint about Gross. The jury agreed and awarded sizable damages. On appeal, the City argues that Davis's transfer was not sufficiently adverse to support the jury's verdict.

---

[7]<u>Meritor</u> suggests that another example of an employer's culpable conduct could be the absence of an anti-sexual harassment policy with a supervisor-bypass provision. 477 U.S. at 72. Because such a policy was in effect in this case, however, we need not address this issue.

On review of the jury's verdict, we view the evidence in the light most favorable to the prevailing party. Elliott v. Byers, 975 F.2d 1375, 1376 (8th Cir. 1992). Applying this standard, we find that Davis's transfer was sufficiently adverse to support the jury's verdict on the retaliation claim. The City points to Davis's salary increase as evidence that the job transfer was not adverse. The jury apparently put more weight on Davis's evidence that the new position lacked supervisory status, had fewer opportunities for salary increases, and offered Davis little opportunity for advancement. The jury was free to credit this evidence and we will not disturb its verdict.

We have considered the remainder of the City's arguments and find them to be without merit.

## III. CONCLUSION

Because the district court erred in instructing the jury on Davis's hostile environment sexual harassment claim, we reverse and remand that claim for a new trial. Finding no error in the jury's verdict for Davis on the retaliation claim, we affirm as to that claim. The case is remanded to the district court for proceedings consistent with this opinion.

RICHARD S. ARNOLD, Chief Judge, concurring in part and dissenting in part.

I agree with the Court that the judgment on the retaliation claim should be upheld, but I respectfully dissent from the Court's action on the harassment claim.

In my view, the District Court's instructions to the jury were correct. If we look to general "agency principles," Meritor Savings Bank v. Vinson, 477 U.S. 57, 72 (1986), it was entirely proper to tell the jury that they could hold the city liable for Gross's conduct if that conduct was within the scope of his employment. Moreover, I do not believe that the "knew or should have known" language which the Court

quotes from certain of our previous opinions was intended to establish a controlling rule of law in cases, like the present one, where the alleged harasser is a high-level supervisor. No such requirement is imposed in other kinds of tort cases, and I do not see why a special rule of law, particularly protective of corporate or governmental entities who are sued, should be fashioned for sexual-harassment cases.

I briefly restate the facts. Mr. Gross was the top person in the city clerk's office. He reported directly to the city council, which had appointed him. Gross's harassing acts included commenting about Davis's attire, monitoring with whom Davis spoke on the telephone while at work, following Davis on her business expeditions to other city offices, waiting outside the women's restroom to ensure that Davis was not conversing with other men, and spreading false rumors to other city employees about Davis's alleged promiscuity. In short, nearly all of Gross's harassment occurred at work and during work hours, and was the kind of conduct that he could engage in because of his position as a supervisor.

The panel cites Smith v. St. Louis University, 109 F.3d 1261, 1264 (8th Cir. 1997), for the proposition that this Circuit requires a plaintiff to demonstrate that an employer knew or should have known of harassment, even that conducted by a supervisor, to establish Title VII liability. But Smith does not foreclose the use of the District Court's instruction; in fact, it preserved the very possibility. Whether the University had actual notice was never at issue; only the promptness of the University's response was. Id. at 1265. Moreover, the opinion left open the possibility that Smith could attempt to demonstrate at trial that the University had constructive notice of the harassment (thereby making the response less prompt) before she provided it with actual notice. Id. at 1265 n.3 ("Smith may be able to demonstrate that the [University] had constructive notice (whether because [the alleged harasser] occupied the top position within the Department, because the harassment was obvious to everyone, or because of some other reason) before Smith's initial complaint provided actual notice.") (emphasis added). I do not think that Smith's recitation of the ordinarily employed

elements of a Title VII case limits a district judge's discretion to tailor his jury instructions appropriately to the facts of the case before him.

Callanan v. Runyun, 75 F.3d 1293 (8th Cir. 1996), and Burns v. McGregor Electronic Industries, Inc., 955 F.2d 559 (8th Cir. 1992), likewise did not resolve the question in this Circuit. In Callanan, this Court affirmed the district court's grant of summary judgment for the defendant on the grounds that the conduct alleged "fell far short of proving the sort of sustained harassment" necessary to support a hostile-environment action. Id. at 1296. The opinion never addressed the "knew or should have known" element, obviating the need for considering the issue by holding that the remedial action taken was prompt and appropriate. Ibid. Burns also did not determine the answer to the question. It held that the "knew or should have known" element was clearly supported by the record, 955 F.2d at 564, reversed the district court's judgment for the defendant, and remanded, on the ground that the district court erred in its analysis of whether the harassment was unwelcome and sufficiently severe or pervasive. Id. at 565-66. Because the employer's knowledge had been clearly established below, the Court had no need to address the issue. Neither of these cases, therefore, decided whether in this Circuit a district judge must always give a "knew or should have known" instruction in cases of hostile-work-environment harassment by a superior. If the alleged harasser is a co-worker, instead of a supervisor, the "knew or should have known" formula makes sense, but in the case of a supervisor, especially the head of a department, it does not. The supervisor effectively is the employer.

The most persuasive authority cited by the Court is Kinman v. Omaha Public School District, 94 F.3d 463 (8th Cir. 1996). That was a claim, brought under Title IX, that a teacher had harassed a student. Citing Title VII cases, the Kinman opinion states that the "knew or should have known" standard applies. But the opinion does not say that this standard always applies in case of hostile-environment harassment of employees. Indeed, the Kinman court, citing Meritor, stated that "when a supervisor uses the power delegated specifically to him by his employer to discriminate on the

-12-

basis of sex, that employee's actions should be imputed to the employer." 94 F.3d at 469. The opinion does add that "in a hostile environment sexual harassment case, 'the usual basis for a finding of agency will often disappear,'" ibid. (quoting Meritor, 477 U.S. at 71). This passage clearly leaves open the possibility that there will be hostile-environment sexual harassment cases in which the usual basis for a finding of agency will be present. I believe that this is such a case. Here, the harasser was a high-level supervisor, at the highest level below the governing body of the city. He was exercising power over the work environment that the city had given him. It makes sense to hold the city responsible for his acts.

I would hold that a district court may give an instruction along the lines of the one given in this case when the alleged harasser is a high-level supervisor, and his acts can therefore be imputed directly to the employer. Meritor instructed courts to look to general "agency principles" to decide when the harassing acts of an employee can be imputed to an employer. Meritor, 477 U.S. at 72. It further explained that, although an employer would not be strictly liable for sexual harassment, an "absence of notice to an employer does not necessarily insulate that employer from liability." Ibid. Where, as here, the alleged harasser is, for all pertinent purposes, the highest official of the employer, I would hold that a district court may instruct the jury that it need find only that the harasser was an agent of the employer and was acting within the scope of employment.

A corporate or governmental entity cannot act by itself. Their personification is a legal fiction, and they can effectuate their goals only through their agents. See Hunter v. Allis-Chalmers Corp., 797 F.2d 1417, 1422 (7th Cir. 1986). As Judge Posner explained it:

> Since the acts of a corporation are acts of human beings, to say that the "corporation" has committed some wrong . . . simply means that someone at the decision-making level in

the corporate hierarchy has committed the wrong; the deliberate act of such a person is the corporation's deliberate act. . .. Whether <u>his</u> superiors know or should have known what he did is irrelevant; it becomes relevant only where the wrong is committed by someone below the managerial level.

<u>Ibid.</u> Likewise, the entity does not itself have a mental capacity by which it can gain knowledge of its employees' wrongdoings. The employer necessarily relies on its agents to ensure that it complies with the laws and does not become subject to liability. When an employer gives a person essentially plenary authority over a department, as the city gave Gross here, that person <u>is</u> the employer for purposes of Title VII, and his acts within the scope of employment are done with the knowledge of the employer, because he necessarily, as the employer, has knowledge of his own actions. See <u>Sauers v. Salt Lake County</u>, 1 F.3d 1122, 1125 (10th Cir. 1993) (holding county could be liable for county attorney's creation of hostile work environment without separate report to county, because county attorney, who had power to hire, fire, and supervise his secretary, "operate[d] as the alter ego of the employer"); see also <u>Martin v. Cavalier Hotel Corp.</u>, 48 F.3d 1343 (4th Cir. 1995) (upholding hotel's hostile work environment liability for the general manager and corporate vice president's sodomizing of employee, despite plaintiff's not otherwise notifying corporation). This would be true as well if other supervisors with power to alter the workplace environment, or those whose specific duty it was to ensure a harassment-free workplace, were themselves the harassers.

Of course, to hold the employer liable, its tortfeasing employee must have been acting within the scope of employment. This is not too difficult to show, particularly in this case, for acts on the employer's premises, or during errands at his behest, or other acts plausibly related to employment will meet this standard. See, <u>e.g.</u>, <u>Doe ex rel. Doe v. B.P.S. Guard Services, Inc.</u>, 945 F.2d 1422, 1425-26 (8th Cir. 1991) (upholding jury's verdict against security-guard company for its guards' having

-14-

surreptitiously videotaped fashion models in dressing room); Ira S. Bushey & Sons, Inc. v. United States, 398 F.2d 167 (2d Cir. 1968) (upholding liability of government for drunken seaman's causing dry dock to fill with water, thereby causing ship to crash into and damage dry-dock wall); Vlotho v. Hardin County, 509 N.W.2d 350 (Iowa 1993) (issue of fact existed as to whether county engineer was acting within scope of employment when he had county bridge he thought dangerous destroyed, without obtaining board's approval as county policy required). The fact that the act itself is tortious, of which an employer would almost always disapprove, does not matter, for the law looks at the conduct with greater generality than that. Otherwise no employer would ever be held liable for its employees' tortious acts. E.g., Briner v. Hyslop, 337 N.W.2d 858, 869-70 (Iowa 1983) (upholding truck owner's liability for his employee's causing accident when driving truck while heavily intoxicated and tired, despite employer's prohibition on driving while drunk). Courts have never construed the scope-of-employment test so narrowly as to exclude all an employee's acts of which an employer would, in retrospect, disapprove. Rather, they consider whether the unlawful acts would foreseeably be committed by employees.

Most circuits that have considered the issue have resolved it as I would. See Karibian v. Columbia University, 14 F.3d 773, 779-80 (2d Cir.), cert. denied, 512 U.S. 1213 (1994); Martin v. Cavalier Hotel Corp., 48 F.3d 1343, 1351-52 (4th Cir. 1995); Canutillo Independent School Dist. v. Leija, 101 F.3d 393, 400 (5th Cir. 1996), pet. for cert. filed, 65 U.S.L. Week 3713 (U.S., Apr. 8, 1997) (96-1616); Kauffman v. Allied Signal, Inc., 970 F.2d 178, 183 (6th Cir.), cert. denied, 506 U.S. 1041 (1992); Ellerth v. Burlington Industries, Inc., 102 F.3d 848, 860 (7th Cir. 1996), vacated and reh'g en banc granted, 102 F.3d 863 (7th Cir. 1997); Sauers v. Salt Lake County, 1 F.3d 1122, 1125 (10th Cir. 1993). Those that have come to a different conclusion appear to have done so because the supervisor with knowledge was not at a level high enough to justify imputing his knowledge to the employer, see Bouton v. BMW of N. Am., Inc., 29 F.3d 103, 108-09 (3d Cir. 1994); Faragher v. City of Boca Raton, 111 F.3d 1530 (11th Cir. 1997) (en banc) (7-5), or because the supervisor was not acting in the scope

of employment, <u>Gary v. Long</u>, 59 F.3d 1391, 1397-98 (D.C. Cir.), <u>cert. denied</u>, 116 S. Ct. 569 (1995).

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.