Keyla TOSADO COTTO and Milagros Tosado, Plaintiff,

v.

GENERAL ACCIDENT INSURANCE COMPANY OF PUERTO RICO, LIMITED; ABC Insurance Co., Defendant.

Civil No. 96–2103(JP).

United States District Court, D. Puerto Rico.

Aug. 26, 1997.

Ricardo Ruiz Diaz, Carolina, PR, for plaintiff.

Luis A. Lopez Lopez, Mayaguez, PR, Sara E. Tolosa Ramirez, Rio Piedras, PR, for defendant.

## *ORDER*

PIERAS, Senior District Judge.

### I. INTRODUCTION

The Court has before it Defendant's Amended Combined Motion for Summary Judgment and Memorandum of Law in Support Thereof (**docket No. 28**) and the Plaintiffs' Opposition to Summary Judgment (**docket No. 35**). The Plaintiffs bring this action under Title VII, 42 U.S.C. § 2000e–2000e–17, alleging that the Defendant is liable for sexual harassment directed against Keyla Tosado Cotto ("Tosado") while she was employed by the General Accident Insurance Company of Puerto Rico ("GAIC"). Specifically, the Plaintiffs allege that Tosado was harassed by Tomás Burgos Sánchez ("Burgos") and that she was discharged for refusing to submit to his advances. In its motion for summary judgment, the Defendant raises three arguments. First, the Defendant asserts that GAIC is not liable for sexual harassment because Tosado failed to notify GAIC and GAIC had no actual or constructive knowledge of the alleged sexual harassment. Second, the Defendant asserts that it is protected from liability because it has a written policy prohibiting sexual harassment and Tosado knew of that policy but failed to

invoke its procedures for addressing and correcting any sexual harassment directed at her. Finally, the Defendant argues that it is not liable for the damages alleged in the complaint because Tosado's termination "was not related to alleged sexual harassment acts." The Court will address each argument in turn.

· In support of its arguments, the Defendant has submitted Tosado's deposition and an unverified copy of a receipt signed by Tosado indicating that she received a copy of GAIC's employment manual and that she agreed to read and comply with its regulations.[1] The Defendant has not provided any sworn statements.

## II. SUMMARY JUDGMENT

Rule 56(c) of the Federal Rules of Civil Procedure provides:

> "[Summary judgment] shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

The purpose of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for a trial." *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir.1990). To make this determination, the Court must cull the record for genuine disputes of material fact, drawing all reasonable inferences in favor of the party against whom summary judgment is sought. *See Kennedy v. Josephthal & Co.*, 814 F.2d 798, 804 (1st Cir.1987). "Material means that a contested fact has the potential to change the outcome of the suit under the governing law if the dispute over it is resolved favorable to the nonmovant." *McCarthy v. Northwest Airlines, Inc.*, 56 F.3d 313, 315 (1st Cir.1995). "A dispute is genuine if the parties' positions on the issue are supported by conflicting evidence." *The Inter-national Association of Machinists and Aerospace Workers v. Winship Green Nursing Center*, 103 F.3d 196 (1st Cir. 1996). If there are material factual disputes, summary judgment is inappropriate. If there are no disputed issues of material fact, the court proceeds to search the undisputed facts in an effort to discern whether the moving party has shown that it is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

The movant bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of the [record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323, 106 S.Ct. at 2553. Where the issue on which the movant seeks summary judgment would be one for the jury at trial, the movant will be entitled to summary judgment if, given the undisputed facts, no reasonable jury could find that the party bearing the burden of persuasion at trial has either established or failed to establish all required elements, depending on whether the movant bears the burden at trial. *Id.*, at 331, 106 S.Ct. at 2556–2557 (Brennan J., dissenting on other grounds) Here the moving party asserts bases for its motion for which it and the nonmoving party will bear the burden of persuasion at trial. Where the moving party does not bear the burden of proof at trial, it must show "that there is an absence of evidence to support the non-moving party's case." *Id.*, at 325, 106 S.Ct. at 2554. In other words, when the moving party does not bear the burden of persuasion, it must establish that no reasonable fact finder could find that the non-movant has established the requisite elements of its claim. On the other hand, "where the moving party will bear the burden of persuasion at trial, that party must support its motion with credible evidence . . . that would entitle it to a directed verdict if not controverted at trial." *Winnacunnet Cooperative School District v. National Union Fire Ins. Co. of Pittsburgh, Pa.*, 84 F.3d 32,

---

1. The copy of the receipt is in Spanish, in violation of Rule 108 of the Local Rules of this Court. The Defendant attached a copy of its Employment Manual (Manual de Empleados) to its first motion for summary judgment. It has not attached that Manual to the amended motion at bar, and the amended motion does not refer to the Manual in any way. Moreover, the Manual is in Spanish and the Defendant has not provided a certified translation, in violation of Rule 108.

35 (1st Cir.1996) (quoting *Celotex*, 477 U.S. at 331, 106 S.Ct. at 2557 (Brennan, *J.*, dissenting)).

Where the moving party has met its initial burden of production, the burden shifts to the non-moving party to show that some triable issue, whether factual or legal, remains unresolved. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. If it succeeds, the motion must be denied; if it does not, the motion will be granted.

When faced with a motion for summary judgment, the Court may consider "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any." Fed.R.Civ.P. 56(c). "In addition, a court may take into account any material that would be admissible or usable at trial . . . [but] inadmissible evidence may not be considered." *Horta v. Sullivan*, 4 F.3d 2, 8 (1st Cir.1993). Moreover, "*mere allegations, or conjecture unsupported in the record, are insufficient to raise a genuine issue of material fact.*" *Id.* (citing *August v. Offices Unlimited, Inc.*, 981 F.2d 576, 580 (1st Cir.1992)) (emphasis added); *accord Medina–Muñoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir.1990) (a court need not credit "conclusory allegations, improbable inferences, and unsupported speculation").

### III. ANALYSIS

The Plaintiffs have alleged sexual harassment under Title VII. Harassment under Title VII can take two forms—*quid pro quo* harassment and hostile work environment harassment. The Plaintiffs' complaint does not specify which type of harassment Tosado was subjected to. In the complaint, in her deposition, and at the Initial Scheduling Conference, the Plaintiffs made the following factual allegations: Burgos called Tosado into his office merely to ogle her; Burgos discussed his personal and sexual life with Tosado; Burgos grabbed Tosado's hands when she would hand something to him; Burgos touched her thighs when he would pass by her, and; on one occasion, Burgos attempted to kiss her. Tosado has testified that nearly all incidents took place in Burgos' office and that she never spoke to anyone other than

her mother about the incidents. Finally, she contends that her termination was based on her refusal to submit to Burgos' advancements. Such allegations could reasonably support claims for either variety of sexual harassment, so the Court will consider her complaint as asserting claims of both *quid pro quo* harassment and hostile work environment harassment. As the standards are different depending on the variety of sexual harassment claims the Plaintiffs bring, the Court must apply the Defendant's arguments to both of the Plaintiff's possible claims.

### A. ACTUAL OR CONSTRUCTIVE KNOWLEDGE

 The Defendant argues that it cannot be held liable for harassment of which it had no actual or constructive knowledge. The employer's knowledge of the supervisor's behavior, either actual or constructive, plays no role in the analysis of a claim under Title VII for *quid pro quo* harassment. *Davis v. City of Sioux City*, 115 F.3d 1365, 1367 (8th Cir.1997) (citing *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)). In such cases, liability is imputed to the employer, and the question of actual or constructive knowledge is irrelevant. *Id.* In order to successfully bring a claim for *quid pro quo* harassment, the Plaintiffs must show: (1) the plaintiff-employee is a member of a protected group; (2) the sexual advances were unwelcome; (3) the harassment was sexually motivated; (4) the employee's reaction to the supervisor's advances affected a tangible aspect of her employment; and (5) *respondeat superior* liability has been established. *Chamberlin v. 101 Realty, Inc.*, 915 F.2d 777, 783 (1st Cir.1990). The Defendant has not addressed the first three elements. The Court will consider the Defendant's first argument as an assertion that the Plaintiffs have not provided sufficient evidence from which a reasonable jury could find for the Plaintiffs with respect to items four and five.

 Here, Tosado's deposition creates a genuine issue of material fact with respect to the fourth element—that "the acceptance or rejection of the harassment by an employee must be an express or implied condition of

the receipt of a job benefit or the cause of a tangible job detriment." *Id.* In her deposition, Tosado asserts that after rejecting Burgos' attempt to kiss her, which occurred near the end of the work day, she went home and then took the next several days off, because the incident affected her "nerves." Tosado Depo., pp. 24–25. Upon returning to the office—approximately one week prior to her termination and only several days after rejecting Burgos last advance—she found her desk moved and her assignments completely altered. Tosado Depo., pp. 25–26. She allegedly received no explanation for the changes or what was to be expected of her in the new position. Tosado Depo., pp. 25–26. Tosado alleges that she was terminated approximately one week after returning from the absence that she says was induced by Burgos' attempt to kiss her. Tosado Depo., p. 29, line 8. From this testimony, a reasonable jury could conclude that Tosado was terminated for refusing Burgos' advancements, and the Plaintiffs have therefore succeeded in creating a genuine issue of material fact with respect to the fourth element.

A genuine issue of material fact with respect to the fifth element of a *quid pro quo* claim "flows from the establishment of the fourth element." *Id.* That is so because the First Circuit has ruled that "an employer is strictly liable for the actions of its supervisors that amount to sexual discrimination or sexual harassment resulting in tangible job detriment to the subordinate employee." *Id.; accord Lipsett v. University of Puerto Rico,* 864 F.2d 881, 901 (1st Cir.1988). Tosado testified that Burgos was the "head" or "manager" of the department in which Tosado worked. Tosado Depo., p. 15, lines 28–32. He interviewed her for her position in his department to replace his secretary, and he "selected" her for the position. Tosado Depo., p. 16, lines 9–23. From these statements, a reasonable jury could certainly infer that Burgos had the power to terminate Tosado. *The Defendant has proffered nothing to rebut or dispel that conclusion or to enlightened the Court regarding Burgos' posi-*

*tion and authority.* In sum, the evidence before the Court creates a genuine issue of material fact regarding each element of the Plaintiffs' claim that the Defendant is liable for Burgos' *quid pro quo* harassment.

■ The standard for imputed liability is less clear for hostile work environment harassment. *Davis,* 115 F.3d at 1367. To succeed under Title VII with a claim of harassment based on allegations of a hostile work environment, a Plaintiff must establish: (1) that she is a member of a protected class; (2) that she was subject to unwelcome sexual harassment; (3) that the harassment was based upon sex; (4) that the harassment was sufficiently severe or pervasive so as to alter the conditions of Plaintiff's employment and create an abusive working environment; and (5) that some basis for employer liability has been established. *E.E.O.C. v. Horizons Hotel Corp.,* 831 F.Supp. 10, 14 (D.Puerto Rico 1993) (citing *Meritor,* 477 U.S. at 66–73, 106 S.Ct. at 2405–2409). The issue of the employer's knowledge bears only on the final element, and the Defendant has not contested any of the first four elements. Specifically, the Defendant's first argument, when applied to the Plaintiffs' claim of hostile work place harassment, is directed solely to the final element—the Defendant asserts that the Plaintiff has not shown any evidence from which a reasonable jury could hold GAIC liable for Burgos' actions.

■ The First Circuit has held that an employer "is liable upon a finding of hostile environment sexual harassment perpetrated by its supervisors upon employees *if* an official representing the [employer] knew, or in the exercise of reasonable care, should have known, of the harassment's occurrence, *unless* that official can show that he or she took appropriate steps to halt it." *Lipsett,* 864 F.2d at 901 (emphasis in original).[2] The Defendant asserts that the Plaintiffs have not provided any evidence from which a reasonable jury could conclude that GAIC knew of Burgos' conduct. First, with respect to actu-

---

**2.** In *Lipsett,* the court of appeals was addressing a claim made under Title IX, not Title VII, but the analysis is couched in terms of Title VII case law and clearly applies to Title VII. 864 F.2d at 896–897 (agreeing that the standards governing claims arising under Title VII and title IX are the same); *cf. Chamberlin,* 915 F.2d at 782.

al notice, the Defendant points to Tosado's testimony that she did not tell anyone of Burgos' conduct except her mother. Tosado Depo. p. 26, lines 30–35; p. 28, lines 1–7; p. 29, lines 3–5. Next, with respect to constructive notice, the Defendant asserts that the conduct engaged in by Burgos of which the Plaintiffs complain could not, as a matter of law, have placed GAIC or any of its officers on constructive notice of Burgos' conduct, particularly because it all took place in Burgos' office while no other employees were present.

The Court disagrees with the Defendants' conclusion, at least as to constructive notice. During her deposition, Tosado described two telling incidents from which a reasonable jury could infer that at least one supervisor at GAIC, had she exercised reasonable care, should have known of Burgos' actions. First, while department supervisor Alina Sandoval ("Sandoval"), see Tosado Depo., p. 15, lines 16–18,[3] was present, Burgos telephoned Tosado at her desk. Tosado Depo., pp. 26–27. Sandoval answered and passed the phone to Tosado. Tosado Depo., p. 26, line 51. While Sandoval was present, Burgos told Tosado that he was out with some friends and asked Tosado to "hop in a cab" and meet him out, telling her that he needed her. Tosado Depo. at pp. 26–27. After voicing her protestations, Tosado hung up the phone, at which time Sandoval asked her if Burgos had been drunk. Tosado Depo., p. 27, line 8. Second, Tosado tells that Sandoval asked her, "Keyla, what does he say . . . why does Burgos have you there [in his office] so long?" Tosado Depo., p. 27, lines 13–14. To this, Tosado replied, "most of the time he's just talking nonsense . . . nothing to do with the job." Tosado Depo., p. 27, lines 14–15. According to .Tosado's testimony, Sandoval replied, "well look, the next time you go over there . . . and a long lapse of time goes by, I'm going to call you like I need you immediately." Tosado Depo., p. 27, lines 16–18. Tosado responded, "great, just great." Tosado Depo., p. 27, line 18. According to Tosado, Sandoval actually carried out the plan several times, calling Tosado whenever Burgos called her into his office for extended periods. Tosado testified that the plan met with success the first few times (after the first few times, Burgos refused to let Tosado respond to Sandoval's calls). Tosado Depo., p. 27, lines 19–22. The Court holds that a reasonable jury could conclude from Tosado's testimony that Sandoval believed that Burgos was capable of drinking during office hours and, in an intoxicated state, asking Tosado to meet with him socially outside of the office during work hours. A reasonable jury could find Sandoval was aware that Burgos kept Tosado in his office for long periods of time for matters not related to work, and that Tosado was not happy about that fact. From these facts a reasonable jury could in turn conclude that Sandoval, had she exercised reasonable care, should have discovered that Burgos was harassing Tosado. Therefore, a genuine issue of material fact exists with respect to each element of the Plaintiffs' hostile environment claim.

## B. WRITTEN POLICY

██ As the Defendant notes in its memorandum of law, the Supreme Court has refused to guarantee a safe harbor to every employer that provides a grievance procedure and policy against discrimination where the complaining employee failed to invoke that procedure. *Meritor,* 477 U.S. at 72, 106 S.Ct. at 2408. But as the Defendant also points out, the Supreme Court's opinion in *Meritor* implies a willingness to create such a harbor where the nondiscrimination policy directly and specifically addresses sexual harassment. *Id.* The Defendant asserts that:

> [Its] "policy against sexual harassment is clear, specific, and alerts its employees of the possible consequences of such conduct within the company [and that] once the company is alerted of any possible acts of sexual harassment, it is committed to take all necessary measures to restore a safe and proper working environment free of any such acts."

---

3. The Defendant has failed to provide any information regarding the positions of either Sandoval or Burgos. From Tosado's testimony, the Court understands that Burgos was the Head of, or Manager of, the Autos Division and that Sandoval was the Supervisor of the Autos Division. Whether Burgos or Sandoval was higher in the Autos Division pecking order is unclear.

GAIC further asserts that Tosado received a copy of it manual containing this policy, was fully aware of its contents, and failed to invoke it by not notifying GAIC of the occurrence of the alleged sexual harassment. While the Defendant's argument is based on a sound legal principal—that the existence of an employment policy against sexual harassment and procedures for addressing incidents of such harassment strongly militates against employer liability for hostile work environment harassment claims,[4] the Defendant has not supported its argument with competent evidence.

There are two problems with the Defendant's second argument, both of which could have been avoided, had the Defendant provided the Court with competent evidence that was available to it. First, GAIC's characterization of its policy and procedures and its asserted dedication to stifling sexual harassment have not been supported by any evidence, and it is for the employer to establish the existence and nature of its policy and procedure. *Gary v. Long*, 59 F.3d 1391, 1397 (D.C.Cir.), *cert. denied,* — U.S. ——, 116 S.Ct. 569, 133 L.Ed.2d 493 (1995). Thus, regardless of whether Tosado received and/or understood the employment manual, the Court has no basis for holding that GAIC has stanched any disputes as to the content and ramifications of GAIC's policies and procedures. Had GAIC provided a certified translation of the relevant portions of its employee handbook, the Court could have made the necessary determination as to the Defendants policies and procedures. Without that evidence, however, the Defendant's motion amounts to a useless exercise, for both itself and the Court.

The second problem with GAIC's argument is that the assertion that Tosado actually received the manual and was fully aware of its contents has not been supported by any evidence that the Court can consider. Tosado's testimony is marginal at best on this point, but she neither admits nor denies that she received the employment manual. In other words, her testimony proves nothing, and it is insufficient to create a factual controversy. Had the Defendant provided any competent evidence to the effect that Tosado had been given the manual, the Court would have been obliged to consider that evidence undisputed. But the evidence provided by the Defendant cannot be considered.

■ The Defendant attaches what appears to be a sworn statement to their motion for summary judgment. In the statement, Keyla Tosado Cotto certifies that she received a copy of GAIC's employment manual and agrees to read the manual and comply with the policies and procedures set forth therein. The statement is dated February 3, 1995 and is signed by Keyla Tosado Cotto. The first and most obvious deficiency with the evidence is that the document has not been accompanied by a certified translation in violation of Rule 108 of the Local Rules of the District Court for the District of Puerto Rico. The Local Rules make clear that

"all documents not in the English language which are presented to or filed in this Court, whether as evidence or otherwise, shall be accompanied at the time of presentation or filing by an English translation thereof, unless the Court shall otherwise order. Such English translation shall be certified by the Court Interpreter."

The Defendant's failure to comply with this rule is inexcusable and renders the statement inadmissible. Second, the document is not notarized, and the Defendant has in no way verified that the signature is Tosado's. Although these flaws render the Court unable to consider the exhibit, they could have easily been avoided. A sworn statement to the effect that such receipts are prepared in the ordinary course of business, and that all employees are provided with employee manuals, and that Tosado herself was provided with the manual, would have permitted the Court to hold that no reasonable jury could conclude that Tosado had not been provided with the manual. Or, the Defendant could

---

**4.** As the Court noted above, with respect to *quid pro quo* harassment, "an employer is strictly liable for the actions of its supervisors that amount to sexual discrimination or sexual harassment resulting in tangible job detriment to the subor-

dinate employee." *Chamberlin,* 915 F.2d at 783. Therefore, the existence of an employer policy against or procedures for addressing sexual discrimination will not shield the employer from liability for quid *pro quo* harassment.

have presented the signed statement to Tosado during her deposition and had her verify its authenticity. Although the Plaintiffs have not disputed that Tosado received a copy of the manual, the burden is on the Defendant to establish that fact. *Gary*, 59 F.3d at 1397. The Court finds the Defendant has failed to provide competent evidence to establish that proposition beyond the cavil of a reasonable jury's decision-making ability.

### C. NON-DISCRIMINATORY REASON FOR PLAINTIFF'S TERMINATION

■ The Defendant's final argument attacks Plaintiffs' ability to establish element four of a successful *quid pro quo* harassment claim—that the employee's reaction to the supervisor's advances affected a tangible aspect of her employment. *Chamberlin*, 915 F.2d at 783. However, the Court has already analyzed that aspect of the Plaintiffs' case, and Tosado's testimony would permit a reasonable jury to find that her discharge was based on her reaction to Burgos' advances. The Defendant final argument can also be construed as an attempt to rebut any suggestion that Tosado's discharge was based on her reaction to Burgos' advances. Specifically, the Defendant asserts that Tosado was terminated for a non-discriminatory reason. According to the Defendant, GAIC terminated Tosado because she had an affair with Luis Robles, a married man who was also employed by the company, and that her relationship somehow "resulted" in Tosado "dishonestly informing people outside of the company that she was the boss over the vice-president of the company."[5] The Defendant also asserts that Burgos played no part in the decision to terminate Tosado's employment. The problem with GAIC's argument is that not one of its assertions has been supported by any evidence—sworn statements, admissions, or other admissible evidence. Particularly disturbing is the Defendant's failure to provide any sworn statements from GAIC employees to establish either that Burgos played no part in her dismissal. At this stage, therefore, the argument cannot serve to dispose of the Plaintiffs' claims.

## IV. CONCLUSION

The Court would like to point out the serious concerns it has with the Defendant's efforts during summary judgment proceedings. In cases of discrimination, plaintiffs generally provide the briefest and most obscure pleadings they can get away with under the lenient pleading rules of the federal courts. The typical complaint under Title VII lists a litany of factual allegations followed by a simple statement that those facts constitute a violation of Title VII. Theories of liability are rarely provided. The complaint in the case at bar is no exception. Summary judgment proceedings present an excellent opportunity to focus the issues, to weed out unprovable theories, and, if possible, to dismiss meritless complaints. The Court does not express any opinion regarding the merits of the Plaintiffs' complaint in the case at bar or whether that complaint could have been dismissed, given Tosado's testimony. However, it seems quite possible that a well-prepared motion for summary judgment could have established, as a matter of law, that GAIC had a clear and specific policy regarding sexual discrimination, that the policy and procedures for addressing allegations of sexual harassment were spelled out fully in GAIC's employment manual, and that Tosado was provided with and agreed to read and comply with the manual. This might have allowed the Court to dispose of any theory of hostile work environment discrimination. But the Court was not presented with a well-prepared motion for summary judgment.

The only competent evidence that the Defendant provided in support of its motion is Tosado's deposition. Sworn statements and certified translations would have permitted the Court to consider both the signed receipt and the employment manual, but the Defendant provided no sworn statements. The Defendant's motion relied on the following assertions of fact:

---

5. The Defendant's motion does not explain who Robles was. The Court remembers that at the Initial Scheduling Conference, the Defendant explained that Robles was the vice-president's driver.

1. At all times relevant to this case, GAIC maintained written policy prohibiting sexual harassment acts toward any of its employees.

2. This policy calls for an immediate and thorough investigation of any complaint of sexual harassment regardless of the position occupied by the alleged wrongdoer.

3. Tosado received a copy of the Employee Handbook, which includes GAIC's policy on sexual harassment; that policy clearly indicates that any claim of sexual harassment would be investigated by the Human Resources Office.

4. At the time of Tosado's dismissal, GAIC was not aware of the occurrence of any of the sexual harassment acts alleged in the complaint.

5. Tosado admitted during her deposition that no other person, except her mother, knew of this alleged conduct; Tosado never notified her immediate supervisor, nor any other employee of GAIC, of the alleged sexual harassment.

6. Tosado admitted during her deposition that all alleged incidents of sexual harassment occurred in private, and that no other person witnessed them.

7. The alleged sexual harassment acts occurred during a short period of time; the alleged conduct was not pervasive and persistent enough to impute knowledge of the conduct to GAIC.

8. Burgos played no part in the decision to terminate Tosado's employment; he did not participate in such decision, nor was he consulted prior to making the same.

9. GAIC's decision to terminate Tosado was based on an affair she was having with another employee, which somehow had caused her to dishonestly proclaim that she was the boss over one of GAIC's vice presidents

The Defendant has not provided any evidence to establish the first three assertions—a certified translation of the employment manual and a sworn statement from a GAIC manager would have sufficed. The Defendant's fifth assertion is simply untrue. Tosado never admitted that no one else knew of the harassment, she merely testified that her mother was the only person she told of the situation. In fact she stated that she believed Sandoval "had a suspicion" that she was being harassed. The Defendant has not provided an iota of evidence to prove its eighth assertion. A sworn statement would have sufficed, or at least put the Plaintiffs to the task of providing their own evidence to create a factual controversy. Finally, the ninth assertion, which the defendant made in the body of its motion, amounts to nothing more than unsubstantiated gossip, and the Court finds offensive the Defendant's willingness to waste the Court's time with such allegations.

The type of sloppy motion practice exhibited by the Defendant creates unnecessary work for the Court and renders worthless an important opportunity to force plaintiffs to clarify their position and theories of liability prior to trial and/or to weed out extraneous and meritless aspects of the claim. The Court cautions the Defendant that it had better provide the Court with a higher caliber of work or retain attorneys who will. If the Defendant submits to the Court any further work of the quality of the motion at bar, sanctions will be meted out.

IT IS SO ORDERED.