**United States Court of Appeals**
**FOR THE EIGHTH CIRCUIT**
No. 96-2395

Diane Ledergerber,             *
                               *
          Appellant,           *
                               *
     v.                        *   Appeal   from   the   United   States
District
                               *   Court for the Western District of
Gary Stangler; Carmen Schultze, *  Missouri.
                               *
          Appellees.           *

_____

Submitted:  January 17, 1997
    Filed:  September 8, 1997
_____

Before RICHARD S. ARNOLD, Chief Judge, and ROSS and BEAM, Circuit Judges.

_____

ROSS, Circuit Judge.


     Diane  Ledergerber  (appellant),  a  Caucasian  income  maintenance
supervisor  with  the  Division  of  Family  Services  (DFS)  of  the  Missouri
Department  of  Social  Services  (DSS),  filed  this  action  on  February  24,
1995.  She alleged that Gary Stangler, director of DSS, and Carmen Schulze,
director  of  DFS  (appellees),  discriminated  against  her  on  the  basis  of  her
race,  in  violation  of  Title  VII,  42  U.S.C.  §  2000e-2;  42  U.S.C.  §  1981a,
and that they retaliated against her for opposing their alleged policy of
affording  deference  to  African-American  employees,  in  violation  of  42
U.S.C.  §  2000e-

3; 42 U.S.C. § 1981a.  The district court[1] granted summary judgment in favor of the appellees.  We affirm.

On March 25, 1993, sixteen African-American income maintenance caseworkers jointly filed a charge of racial discrimination against DFS regarding hiring and evaluation practices, probationary procedures, and general disparate treatment.  Appellant's name did not appear in this charge of discrimination.  On July 20, 1993, three of these caseworkers filed a new charge of discrimination, this time asserting that appellant had retaliated against them for filing the earlier discrimination charge by searching a complainant's desk in her absence, selectively enforcing office dress code against a complainant, and reprimanding complainants for abusing break-time privileges, while ignoring infractions of other employees.

After an investigation of the two discrimination charges, DSS director Stangler found that hiring practices at the DFS office were flawed, that caseworker case approval and probation were inconsistently applied, and that two of the six allegations of retaliation against appellant were substantiated, including appellant's decision to send one complainant home for improper office attire and her reprimand of another complainant for failing to adhere to break-time policies.  Stangler recommended changes in hiring, probation, and case approval  practices and mediation of disputes.  Concluding that the atmosphere in appellant's section was "rife with tension and dissension," Stangler also recommended corrective action for appellant.

Following Stangler's recommendation, effective November 16, 1993, appellant's staff of four income maintenance supervisors and their caseworkers were replaced with a different staff of four income maintenance supervisors and their caseworkers.  It is undisputed that appellant's position as an Income Maintenance Supervisor III remained

---

[1]The Honorable Scott O. Wright, Senior United States District Judge for the Western District of Missouri.

unchanged, and that her basic responsibilities and staff size remained substantially the same.

Appellant subsequently filed suit, asserting that the replacement of her staff and the placement in her file of a statement that discriminatory practices would not be tolerated constituted discrimination on the basis of her race, as well as retaliation against her for opposing appellees' alleged policy of giving deference to African-American employees. The district court determined that appellant had established a prima facie case of discrimination, but ultimately concluded that appellant's claim must fail because appellant was unable to show that the appellees' actions were taken on the basis of race or retaliation.

In reviewing a grant of summary judgment, this court applies the same standard as the district court and views the facts in the light most favorable to the non-moving party, giving that party the benefit of all reasonable inferences to be drawn from those facts. Harlston v. McDonnell Douglas Corp., 37 F.3d 379, 382 (8th Cir. 1994).

A Title VII plaintiff has the initial burden of establishing by a preponderance of the evidence a prima facie case of discrimination. Only upon this prima facie showing does the burden of production shift to the employer to articulate some legitimate, nondiscriminatory reason for the employment action at issue. If the employer carries this burden of production, the burden shifts back to the employee to demonstrate that the proffered reason is mere pretext for discrimination. Thomas v. Runyon, 108 F.3d 957, 959 (8th Cir. 1997).

In order to overcome her initial burden of establishing a prima facie case of discrimination or retaliation, appellant was required to show, among other things, that she suffered an adverse employment action that affected the terms or conditions of her employment. Harlston, 37 F.3d at 382. The district court believed that appellant satisfied this burden by producing evidence that she suffered a loss of status and

prestige with the reassignment of her staff. We conclude, however, that appellant failed to establish how such consequences effectuated a material change in the terms or conditions of her employment. While the action complained of may have had a tangential effect on her employment, it did not rise to the level of an ultimate employment decision intended to be actionable under Title VII. In <u>Harlston</u>, 37 F.3d at 382, we stated that "[c]hanges in duties or working conditions that cause no materially significant disadvantage . . . are insufficient to establish the adverse conduct required to make a prima facie case." There, we held that a secretary's reassignment to a different position without any reduction in title, salary or benefits, even though the new position involved fewer secretarial duties and was more stressful, did not constitute an adverse employment action. We stated that "[t]his describes nothing 'more disruptive than a mere inconvenience or an alteration of job responsibilities.'" <u>Id</u>. (quoting <u>Crady v. Liberty Nat'l Bank & Trust Co.</u>, 993 F.2d 132, 136 (7th Cir. 1993)). <u>See also</u> <u>Flaherty v. Gas Research Inst.</u>, 31 F.3d 451, 457 (7th Cir. 1994) (holding a semantic change in title and a "bruised ego" did not constitute adverse employment action where pay, benefits and level of responsibility remained the same); <u>Spring v. Sheboygan Area Sch. Dist.</u>, 865 F.2d 883, 886 (7th Cir. 1989) (finding "public humiliation" is not sufficient to establish age discrimination because "public perceptions were not a term or condition of [the plaintiff's] employment").

The clear trend of authority is to hold that a "<u>purely</u> lateral transfer, that is, a transfer that does not involve a demotion in form or substance, cannot rise to the level of a materially adverse employment action." <u>Williams v. Bristol-Meyers Squibb Co.</u>, 85 F.3d 270, 274 (7th Cir. 1996) (emphasis in original). A transfer involving only minor changes in working conditions and no reduction in pay or benefits will not constitute an adverse employment action, "[o]therwise every trivial personnel action that an irritable . . . employee did not like would form the basis of a discrimination suit." <u>Id</u>.

Appellant did not suffer the type of adverse employment action that is necessary to establish a prima facie case of discrimination under Title VII. Appellant offers no evidence to show that an exchange of her staff, while her salary, benefits, responsibilities, title and even office location remained the same,[2] somehow materially altered the terms or conditions of her employment. Further, the placement of the notice in appellant's file that discrimination is an unlawful employment practice did not constitute an adverse employment action. This notice, which fairly described the law, was given to the other employees at appellant's level and simply reiterated what was already part of DSS policy and performance appraisals, and was eventually deleted from the employees' files. Accordingly, we conclude that appellant has failed to establish a prima facie case of discrimination and we affirm the district court's grant of summary judgment in favor of appellees.[3]

BEAM, Circuit Judge, dissenting.

The ultimate determination of adverse employment action is a question of fact for the jury. <u>Davis v. City of Sioux City</u>, 115 F.3d 1365, 1369 (8th Cir. 1997). I disagree with the court's conclusion that no reasonable jury could find that Diane

---

[2]We agree with the Seventh Circuit that an employer cannot insulate itself from liability for discrimination merely by offering a transfer at the same salary and benefits. <u>See</u> <u>Flaherty v. Gas Research Inst.</u> 31 F.3d 451, 456-57 (7th Cir. 1994). The Seventh Circuit noted that other circuits have found adverse employment actions "in a [sic] employer's moving an employee's office to an undesirable location, transferring an employee to an isolated corner of the workplace, and requiring an employee to relocate her personal files while forbidding her to use the firm's stationary and support services." <u>Id</u>. (quoting <u>Collins v. State of Illinois</u>, 830 F.2d 692, 703 (7th Cir. 1987)).

[3]We may affirm a judgment on any ground supported by the record, even if not relied upon by the district court. <u>See</u> <u>Maness v. Star-Kist Foods, Inc.</u>, 7 F.3d 704, 709 (8th Cir. 1993), <u>cert. denied</u>, 512 U.S. 1207 (1994).

Ledergerber has suffered from an adverse employment action, and therefore dissent.

In <u>Harlston</u>, we properly shied away from allowing a plaintiff's subjective perception about a reassignment to control whether a change is materially adverse. 37 F.3d at 382. I do not believe, however, that <u>Harlston</u> stands for the proposition that an employer can avoid Title VII liability by characterizing all changes in duties and treatment as qualitative and, therefore, non-adverse. In <u>Davis</u>, the defendant argued that the plaintiff's transfer to a different job at a higher salary was not adverse. We observed that "[t]he jury apparently put more weight on Davis's evidence that the new position lacked supervisory status, had fewer opportunities for salary increases, and offered Davis little opportunity for advancement. The jury was free to credit this evidence . . . . " 115 F.3d at 1369. Ledergerber, like <u>Davis</u>, has presented sufficient evidence from which a reasonable jury could find that she has suffered an adverse employment action.

The court views the only harm worked by Ledergerber's transfer as a loss of status and prestige. First, I cannot accept the premise that being identified as a racist by one's employer "cause[s] no materially significant disadvantage." <u>Harlston</u>, 37 F.3d at 382. Furthermore, we have previously held that, under certain circumstances, the loss of public respect and stature can constitute adverse employment action. In <u>Goodwin v. Circuit Court of St. Louis County, Mo.</u>, 729 F.2d 541, 547 (8th Cir. 1984) the court held that a transfer, with the same pay, from a position as a hearing officer to that of a staff attorney was adverse because the new position was less prestigious. The loss of intangible status has been deemed by other circuits, particularly in institutional employment settings like the DFS, to be legally sufficient to state a claim of adverse employment action. <u>See</u>, <u>e.g.</u>, <u>Bryson v. Chicago State Univ.</u>, 96 F.3d 912 (7th Cir. 1996) (loss of unofficial "in-house title" and membership on university committees, without change in duties, rank or salary, constitutes adverse employment action); <u>De la Cruz v. New York City Human Resources Admin.</u>, 82 F.3d 16 (2d Cir. 1996) (transfer from an elite division to a less prestigious unit, even though two units are

officially lateral, constitutes adverse employment action); <u>Vojvodich v. Lopez</u>, 48 F.3d 879 (5th Cir. 1995) (in a section 1983 claim, transfer from position of Narcotics Lieutenant to Communications/Dispatching Lieutenant constitutes adverse employment action because new position was "less prestigious" and "offered less job satisfaction"), <u>cert. denied</u>, 116 S. Ct. 169 (1995).

Moreover, loss of status is not the only detriment Ledergerber claims to have suffered.  There is evidence in the record that Ledergerber's new subordinates were comprised of less desirable "problem employees" that the other supervisors did not want on their staff.  Appellant's App. at 136, 139-40.  Ledergerber's new subordinates work in the "Claims and Restitution Unit" rather than dealing with casework and applications, and this substantive change has her in charge of employees in an area with which she is not familiar.  Appellant's App. at 136.  Ledergerber reports that her transfer has created the perception that she is a racist, which, in turn, has resulted in more complaints by subordinates and has limited her opportunities for promotion.  Appellant's App. at 137, 140-41.  Finally, and perhaps most tellingly, when the caseworkers initially filed their charges against Ledergerber, they requested that Ledergerber be "terminated <u>or transferred</u>."  Appellant's App. at 37 (emphasis added).  From this, an independent investigator used by DFS to investigate the original charges of discrimination characterized the action taken against Ledergerber as disciplinary.  Appellant's App. at 107.  Even internal departmental correspondence refers to  the shift in staff away from Ledergerber as "corrective action for Ms. Ledergerber." Appellant's App. at 61 and 71.

There is a controverted issue of fact as to whether Ledergerber suffered an adverse employment action.  It is not this court's function to resolve fact questions.  This case should be remanded for trial, and I therefore respectfully dissent.

A true copy.

Attest:

       CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.