**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

ARLENE SWERDLOFF,
Plaintiff-Appellant,

v.

GREEN SPRING HEALTH SERVICES,
INCORPORATED,
Defendant-Appellee.

No. 97-2282

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Frederic N. Smalkin, District Judge.
(CA-96-981-S)

Argued: January 29, 1998

Decided: April 2, 1998

Before WILKINSON, Chief Judge, PHILLIPS,
Senior Circuit Judge, and VOORHEES, United States District Judge
for the Western District of North Carolina, sitting by designation.

_____

Affirmed by unpublished opinion. Senior Judge Phillips wrote the
opinion, in which Chief Judge Wilkinson and Judge Voorhees joined.

_____

**COUNSEL**

**ARGUED:** John Peter McKenna, O'MALLEY, MILES, NYLEN &
GILMORE, P.A., Calverton, Maryland, for Appellant. Carl Reuel
Gold, LAW OFFICES OF CARL R. GOLD, Towson, Maryland, for
Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PHILLIPS, Senior Circuit Judge:

Plaintiff Arlene Swerdloff sued her former employer, Green Spring Health Services, Inc. alleging age discrimination and retaliation in violation of the Age Discrimination in Employment Act ("ADEA"). See 29 U.S.C. § 621 et seq. The district court granted Green Spring's motion for summary judgment and Swerdloff appeals. We affirm.

I.

On September 23, 1991, at the age of fifty-eight, Swerdloff began work at Green Spring as Manager of Proposals and Communications. Swerdloff's 1992 performance review rated her overall job performance as "Meets Job Standards."**1**  In 1993, after being reassigned as Communications Manager, Swerdloff received an overall performance rating of "Exceeds Job Standards."

In 1994, Swerdloff met her quarterly employee goals and received bonuses in every quarter. In the Fall of 1994, Green Spring decided to create a position of Director of Public Relations and Communications ("the Director position"). Although Green Spring's Dan Klein initially indicated to Swerdloff that she "had the inside track" for the position, Chuck Kiskaden later told Swerdloff that Green Spring was considering hiring someone with strong initial public offering ("IPO") experience. In January of 1995, Green Spring hired Catherine Campbell to fill the Director position. Once hired, Campbell became Swerdloff's supervisor.

_____

**1** The six possible ratings for overall performance in Green Spring's rating system include: (1) Does Not Meet Job Requirements; (2) Needs Improvement; (3) Meets Job Standards; (4) Exceeds Job Standards; (5) Exceptional Performance; and (6) New to Position.

2

In February of 1995, Campbell met with Swerdloff and allegedly told her that she was "old fashioned," "manual" and "didn't belong in the new age, in the new dimension." According to Swerdloff, Campbell "repeated maybe six or seven times old, old, old, old fashioned, old dimension, manual, not up to speed, not up to the whole new age" and said that while Swerdloff "had done okay in the past," she "was really too old to continue in this new age and go forward with the company."

On March 17, 1995, Kiskaden prepared Swerdloff's 1994 performance review and rated her overall performance as"Needs Improvement." In late March or early April of 1995, Swerdloff filed a discrimination complaint with Green Spring's Human Resources Department. On April 7, 1995, Kiskaden, Campbell, and Rhonda Pierce of Human Resources, met with Swerdloff to discuss Swerdloff's objections to her 1994 review and her discrimination complaint.

On May 1, 1995, Swerdloff filed a complaint with the EEOC. Seven days later, Kiskaden prepared a revised 1994 performance review for Swerdloff, upgrading her rating to "Meets Job Standards." The revised review states that it was "provided to recognize the fact that for the most of 1994 very little formal feedback was provided to [Swerdloff]." Swerdloff objected to the revised review, arguing that she was entitled to a rating of "Exceptional Performance."

Swerdloff was absent from work for approximately ten weeks between February and July of 1995. In early 1995, Green Spring hired a temporary worker to fill in for Swerdloff during her absences. When Swerdloff returned to work in March of 1995 after a three-week absence, Campbell decided that due to project deadlines, the temporary worker would continue with the projects that had been assigned to her.

In July of 1995, Swerdloff took short-term disability. In December of 1995, she resigned. On March 29, 1996, Swerdloff filed the instant lawsuit alleging age discrimination and retaliation in violation of the ADEA. After discovery, Green Spring moved for summary judgment. The district court granted Green Spring's motion and Swerdloff appeals.

3

II.

We review grants of summary judgment de novo, applying the same standards as applied by the district court. See Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1127-28 (4th Cir. 1987). Summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c).

In order to establish a claim under the ADEA, a plaintiff must show that but for the employer's motive to discriminate against the plaintiff on the basis of age, the plaintiff would not have been subjected to an adverse employment action. See EEOC v. Clay Printing Co., 955 F.2d 936, 940 (4th Cir. 1992). A plaintiff may prove his case using ordinary standards of proof by direct or indirect evidence or by resorting to the judicially created scheme set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Clay, 955 F.3d at 940.

To establish a discrimination claim under ordinary proof principles, a plaintiff must show that he is covered by the ADEA, that he suffered an unfavorable action by an ADEA-covered employer, and that age was a determining factor in the action. See id. at 940-41.

Alternatively, under the McDonnell Douglas scheme, a plaintiff must first demonstrate a prima facie case. See id. at 941. If this showing is made, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for his action. See id. If the defendant is successful in carrying his burden, the plaintiff must demonstrate by a preponderance of the evidence that defendant's reasons are pretextual and that the real reason was the discriminatory one alleged. See St. Mary's Honor Center v. Hicks , 509 U.S. 502, 515 (1993).

In this case, Swerdloff alleges both age discrimination and retaliation on account of filing a discrimination complaint. Specifically, she alleges that Green Spring discriminated against her on the basis of age by not selecting her for the Director position. She also claims that Green Spring discriminated and retaliated against her by giving her a poor 1994 performance review which resulted in a loss of pay.

4

Finally, Swerdloff alleges that Green Spring retaliated against her by denying her the opportunity to perform many of her previous job duties and assigning her menial and trivial tasks.

A.

The district court found that Swerdloff's claim regarding the Director position failed because "there is absolutely no evidence that she was as well qualified as Ms. Campbell, given Ms. Campbell's extensive background with a publicly-held corporation, including IPO experience." Implicitly conceding that Campbell has superior IPO experience, Swerdloff argues that the suggestion that she was not hired for the Director position because of her inferior IPO experience is pretextual. The only significant argument that Swerdloff makes in this regard is that Green Spring has never gone public. This fact, however, does not indicate that it never contemplated doing so. Thus, the fact that Green Spring never actually made a public offering is insufficient to establish that Green Spring's reason for hiring Campbell is "unworthy of credence." See Clay, 955 F.2d at 943 (quotation omitted). In any event, Swerdloff has not identified what she believes were the relevant selection criteria for the Director position, let alone establish that she was qualified for the job. See Carter v. Ball, 33 F.3d 450, 458 (4th Cir. 1994) (to prove a prima facie case of discriminatory failure to promote, plaintiff must show, among other things, that he was qualified for the position).

Swerdloff also argues that the district court failed to consider her direct evidence of discrimination. Specifically, Swerdloff argues that Campbell's comments in their February meeting constitute direct evidence that Green Spring discriminated against her on the basis of age when it declined to select her for the Director position. Campbell, however, was not even employed by Green Spring when the hiring decision for the Director position was made and thus could not have had any role in the decision making process. Her comments to Swerdloff during the February meeting, therefore, lend no support to this claim.

B.

Swerdloff contends that Green Spring discriminated and retaliated against her by giving her an undeservedly low performance evalua-

5

tion in 1994. According to Swerdloff, since merit pay increases and bonus payments are based almost entirely on the results of performance appraisals, the 1994 review caused her a loss of pay. Swerdloff acknowledges that her 1994 review was upgraded from"Needs Improvement" to "Meets Job Expectations" and that the revised review awarded her a retroactive merit raise. Swerdloff argues, however, that the revised review was too low and that if she had been rated higher, she would have received a larger merit increase and additional quarterly bonuses.

Swerdloff's only direct evidence of discrimination is Campbell's comments at the February meeting. These comments cannot prove her lost pay claim because Swerdloff has presented no evidence that Campbell had any role in preparing her initial or revised 1994 review.

Additionally, Swerdloff's lost pay/age discrimination claim fails under the McDonnell Douglas paradigm. Assuming that her forecast of evidence made out a prima facie case, Swerdloff's revised 1994 review sets out detailed explanations for the rating given, specifically identifying shortcomings in Swerdloff's performance precluding a higher rating. Swerdloff does not directly challenge the comments in the revised review. Rather, she argues that because she received favorable reviews in the past and because she received quarterly bonuses in 1994, she was entitled to an "Exceeds Job Standards" rating in 1994 and that the criticisms asserted in the 1994 review are pretextual. Swerdloff, however, introduced no evidence establishing that the criteria for quarterly bonuses are the same criteria used in annual reviews; her reliance on the fact that she received quarterly bonuses in 1994, therefore, does not advance her argument. [2]

Swerdloff's argument that her past reviews justify a higher 1994 review also fails. Apparently, Swerdloff only had two other reviews. In one, she was rated "Exceeds Job Standards;" in the other, she was rated "Meets Job Standards." The fact that Swerdloff previously received a Meets Job Standards rating undercuts rather than supports her claim as Meets Job Standards was the very rating given in the

_____

[2] In fact, the record suggests that different factors are used for quarterly bonuses and annual reviews. (Compare JA 385-93 (documents regarding quarterly bonuses) with JA 335-40 (revised 1994 review).)

6

revised 1994 review. The fact that Swerdloff once received an Exceeds Job Standards rating is likewise unpersuasive. The 1994 revised review contains specific criticisms of Swerdloff's performance, criticisms not made in her earlier Exceeds Job Standards review. Swerdloff cannot establish that the criticism in the 1994 review are pretextual by arguing that she once received a higher rating when such criticisms were not made.

Similarly, Swerdloff's claim that the 1994 review was the result of retaliation also must fail. To establish a prima facie case of retaliation, a plaintiff must show that (1) he engaged in a protected activity; (2) his employer took an adverse employment action against him; and (3) a causal connection existed between the protected activity and the adverse action. See McNairn v. Sullivan , 929 F.2d 974, 980 (4th Cir. 1991)(Title VII case).

Because Kiskaden prepared the initial 1994 review before Swerdloff filed her internal complaint, Swerdloff cannot establish the requisite causal connection with regard to the initial review. Although Kiskaden knew about Swerdloff's internal complaint when he prepared the revised review, that review upgrades her performance rating, thus precluding a finding that the revised review constitutes an adverse action. In any event, even if Swerdloff could establish a prima facie case for retaliation with regard to the revised review, her claim still would fail. The revised review provided legitimate nondiscriminatory reasons for the "Meets Job Standards" rating and Swerdloff did not produce any evidence indicating that these reasons were pretextual. See Carter, 33 F.3d at 460 (holding that where defendant's reasons for demoting plaintiff included his failure to meet deadlines and unsatisfactory work and where there is no evidence that these reasons were pretextual, plaintiff failed to meet his burden of proving retaliatory discharge).

C.

Finally, Swerdloff argues that as a result of Green Spring's age discrimination and retaliation, she "suffered a loss of many of her position responsibilities" and was "assigned to secretarial or clerical duties." Specifically, Swerdloff complains that Green Spring took her off a significant project and took away her responsibilities to write

7

member and corporate communications, prepare press releases, participate in lobbying, have breakfast, lunch and dinner meetings with various organizations, agencies, and the media, and attend out-of-state conferences. She further contends that after taking away these responsibilities, Green Spring assigned her to tasks such as ordering promotional items, counting and sorting business cards, assembling, disassembling, and packing away Green Spring's trade conference display booth, preparing the employee newsletter, and stuffing envelopes. Swerdloff argues that her loss of responsibilities prevented her from earning quarterly bonus and merit pay increases. Swerdloff also suggests somewhat obliquely that the changes in job responsibilities lessened her potential for promotion.

"The law affords no protection from discrimination unless there has been some adverse employment action by the employer." Bristow v. Daily Press, Inc., 770 F.2d 1251, 1254 (4th Cir. 1985), cert. denied, 475 U.S. 1082 (1986). Changes in duties that cause "no materially significant disadvantage" are insufficient to establish an adverse employment action. Ledergerber v. Stangler, 122 F.3d 1142, 1144 (8th Cir. 1997) (Title VII case) (quotation omitted). Here, Swerdloff asserts that because of the changes in her job responsibilities, she is less likely to obtain a promotion and receive bonuses and salary increases. She has, however, produced no evidence to support this contention and her claim must therefore fail for lack of proof of an adverse employment action.

III.

For the reasons discussed above, the judgment of the district court is affirmed.

AFFIRMED

8