**IT IS HEREBY ORDERED** that defendant's motion for summary judgment on counts I and II of plaintiff's amended complaint [# 66–1] is granted and plaintiff's motion for summary judgment on count I [# 63–1] is denied.

**IT IS FURTHER ORDERED** that defendant's motion to strike plaintiff's affidavit of Douglas Whitford [# 61–1] is denied as moot.

Jessica **KEEFER**, Plaintiff,

v.

**UNIVERSAL FOREST PRODUCTS, INC.**, Defendant.

No. 98–0432–CV–W–8–5–3.

United States District Court,
W.D. Missouri,
Western Division.

Aug. 25, 1999.

---

1.  While plaintiff concedes that defendant is not currently offering teleticketing services in St. Louis, it contends that "there can be no doubt that given the slightest opportunity, they [defendant] will make a strong attempt to enter the St. Louis market as a teleticketing service."  The Court is aware that in *Maritz, Inc. v. Cybergold, Inc.,* 947 F.Supp. 1328, 1335 (E.D.Mo.1996), the court stated that a Lanham Act claim was not necessarily premature if the defendant's business was not yet operational.  The court stated "a Lanham Act claim could exist even before a defendant actually opens the business, so long as the acts of defendant are imminent and impending."  Here defendant has not engaged in any conduct that demonstrates that teleticketing in the St. Louis market is imminent and impending.  In fact, according to defendant's Annual Report Pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 for the Fiscal Year ended December 11, 1998, defendant only teletickets in nineteen of its thirty-four markets, thus showing that defendant's entrance into a market does not necessarily mean that teleticketing in that same market is "imminent and impending."

Lynne J. Bratcher, Marie L. Gockel, Bratcher & Gockel, L.C., Kansas City, MO, for Jessica Keefer, plaintiff.

Ann Mesle, Melody L. Nashan, Lathrop & Gage, Gail A. Goeke, Lathrop & Gage, L.C., Kansas City, MO, for Universal Forest Products, Inc., a foreign corporation, defendant.

## ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

SMITH, District Judge.

The Court has reviewed the parties' arguments and the portions of the record accompanying them, and concludes there are disputed issues of material fact that preclude entry of summary judgment. Accordingly, Defendant's Motion for Summary Judgment (Doc. # 66) is denied.

When denying a motion for summary judgment the Court ordinarily does not engage in an exhaustive discussion of the facts because it is unnecessary to do so. The Court's view of the facts is ultimately supplanted by the jury's view of the facts, and the Court's view of the facts is therefore of benefit to no one. However, further discussion is required when resolution of the issues requires the resolution of legal issues, and in this case Defendant's Motion presents three legal issues that require discussion.

■ The first issue is whether this case should be treated as one of co-worker or supervisor harassment. Defendant contends that Darrell Foley was not a supervisor over anyone (including Plaintiff) because he did not have the authority to hire, fire, discipline, or promote. However, there are facts in the record that suggest Foley did have some supervisory power. For instance, a document entitled "Mike Weems—2nd Half '97 Goals" indicates that one of his goals is to "[p]rovide direction to Darrell and Mark to help them run their departments." The fact that Foley has a "department" is evidence that he was a supervisor.

■ More importantly, as a legal matter it is not necessary that Foley actually hold the title of "supervisor." Vicarious liability exists for the employer under the principles set forth in section 219(2)(d) of the Restatement of Agency, which discusses "vicarious liability for intentional torts committed by an employee when the employee uses apparent authority (the appar-

ent authority standard), or when the employee was aided in accomplishing the tort by the existence of the agency relation (the aided in the agency relation standard."). *Burlington Indus. v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257, 2268, 141 L.Ed.2d 633 (1998) (quotation omitted). It is true that generally "a supervisor's harassment involves misuse of actual power, not the false impression of its existence. Apparent authority analysis therefore is inappropriate in this context." *Id.* However, this is true only in the usual case; "[i]f, in the unusual case, it is alleged there is a false impression that the actor was a supervisor, when he in fact was not, the victim's mistaken conclusion must be a reasonable one." *Id.*

Here, Plaintiff testified that she reported to Foley on a daily basis for work assignments, provided Foley with medical documentation for her sick leave, and called him to advise when she was absent from work. Keefer Depo. at 36; 191. She spoke to Foley about her desire to learn how to operate a forklift, and he began training her. Keefer Depo. at 63–64. Foley discussed Plaintiff's performance deficiencies with her, Keefer Depo. at 82, and told Plaintiff that he would talk with Mike Weems about her raise. Keefer Depo. at 83–84. In her affidavit, Plaintiff also declared that Weems introduced Foley to her as a supervisor and told her to see Foley if she had any questions. She also averred that Foley approved her requests for leave. Keefer Affidavit, ¶ 8. Whether Weems or any other of Defendant's supervisors did anything to encourage Plaintiff in her belief that Foley was a supervisor is not clear on the record. There are facts on both sides demonstrating that (1) Foley was (or was not) a supervisor and (2) even if he was not a supervisor, he was (or was not) performing some of the functions of a supervisor with (or without) Defendant's approval. The ultimate decision on this matter will have to be made by the jury.

The second contested legal issue is whether this is a "single event" instance of harassment. The significance of this issue is diminished by evidence that (1) male employees brought, displayed, and discussed sexually explicit magazines, and (2) Plaintiff complained about this conduct without result.[1] There is also evidence that Foley put his arms around Plaintiff's shoulder and slapped her legs—and there is evidence that Plaintiff was not offended by this conduct until after the incident in the shed, meaning it will be the jury's task to evaluate the import of this testimony.

■ In any event, the Court concludes that under proper circumstances a single incident of harassment can be actionable. In *Ellerth* and *Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998)—both of which were issued on the same day—the Supreme Court promulgated an affirmative defense available in cases where a supervisor engaged in sexual harassment but no tangible employment action (e.g., firing or demoting) occurs. "The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Ellerth*, 118 S.Ct. at 2270; *see also Faragher*, 118 S.Ct. at 2293.[2] The Eighth Circuit has observed that the existence of this defense may preclude liability in single event cases, but at the same time observed that the defense

1. Plaintiff has identified other supposed evidence of harassment, but the Court is not persuaded that the evidence is probative. For instance, there is evidence that Weems referred to his ex-wife as a "bitch." In contrast, there is no evidence that Weems referred to any of his female subordinates—or to women in general—in a similarly derogatory manner. Weems' negative feelings toward his ex-wife do not appear probative on the issue of whether Plaintiff was harassed. Whether this evidence should be admitted at trial can be addressed at a later time.

2. Although the quote uses the conjunctive "and," it appears from the surrounding discussion that either of these elements can be proved in order to establish the defense.

may provide no protection in a case where "the employer learns that the harassment has occurred and fails to take proper remedial action." *Todd v. Ortho Biotech, Inc.,* 175 F.3d 595, 598 (8th Cir.1999). Indeed, the first component of the defense does not merely require an investigation and a response; it requires a *reasonable* investigation and a *reasonable* response. Thus, for instance, if an employer were to investigate and determine that harassment occurred and as a solution fired the complainant, the *Ellerth/Faragher* defense would not be proved. Similarly, if the company investigated the complaint but failed to interview known eyewitnesses, a jury might conclude that the matter was not investigated in a reasonable manner.

When the facts are viewed in the light most favorable to Plaintiff, a jury could conclude that Defendant did not conduct a reasonable investigation or respond in a reasonable manner. During the investigation, Plaintiff and Foley provided two completely different versions of the events that transpired in the shed. Plaintiff essentially described a two-hour encounter during which Foley begged Plaintiff to have sex with him and claimed to have thoughts of suicide. Foley contended that the discussion was held at Plaintiff's insistence because she wanted to discuss "boyfriend" problems with Foley. Defendant ultimately concluded that it did not know who to believe and so chose to do nothing. However, there is evidence that, if believed by the jury, would support a finding that Defendant did not act reasonably. Plaintiff told Defendant's representatives that Foley's wife called her and said that Foley had admitted what happened in the shed and that she wanted Plaintiff's version of events. Plaintiff also related a series of phone calls Foley made the night of and the day following the incident; some of the calls were taken by Plaintiff's fiancee. It does not appear that Defendant contacted either Foley's wife or Plaintiff's fiancee; the information these two witnesses could

have provided would have gone a long way toward helping Defendant determining whether Foley or Plaintiff accurately described the shed incident.[3]

Other information known to Defendant also bore on Foley's credibility, but appears to not have been considered. Foley initially indicated he could not provide any information because he had blacked out for 45–50 minutes and could not recall whether or not he asked Plaintiff to have sex with him. Upon being advised that the company might have to credit Plaintiff's version of events, causing him to lose his job, Foley "remembered" that Plaintiff instigated the discussion because she was having problems with her boyfriend and a co-worker and that he had not asked Plaintiff to have sex with him. In an attempt to discredit Plaintiff, Foley also stated that he and the office manager had arranged for Plaintiff to get psychiatric help at a hospital, but this information was discovered to be false. Approximately one week later, Foley called to inform company officials that Plaintiff was the real problem because she frequently exposed her breasts at truck drivers and performed oral sex on male employees. Defendant did not credit these claims, but it also does not appear that these false statements were considered in evaluating Foley's conduct or how to respond to Plaintiff's complaint.

Defendant concluded that it was unable to determine what happened in the shed, and so it had no basis for disciplining Foley. It promised to limit Plaintiff's contact with Foley and vice versa but suggested no concrete means for doing so, which is particularly telling in light of the degree of job-related interaction they had previously. Plaintiff was also offered a demotion to a receptionist's position, which she rejected.

■ As stated, these are the facts viewed in Plaintiff's favor. There are

3. Foley eventually explained that he made the calls because he was concerned about Plain-

tiff; however, it does not explain the number of calls (five) made in less than twelve hours.

additional details that support Plaintiff's position, and there are facts that favor Defendant's claim that it acted in a reasonable manner once it received Plaintiff's complaint. However, based on this record the reasonableness of Defendant's actions cannot be determined as a matter of law and must be determined by a jury. *Carter v. Chrysler Corp.*, 173 F.3d 693, 702 (8th Cir.1999) ("The promptness and adequacy of an employer's response will often be a question of fact for the factfinder to resolve.").[4]

The third and final legal discussion involves Plaintiff's claim that she was discriminated against based on gender in (1) the provision of equipment, and (2) the denial of a promotion. The evidence demonstrates that Plaintiff was provided with three pieces of safety equipment: goggles, gloves, and a back brace. There was no apparent problem with the goggles, but the gloves and back brace were too big even though Plaintiff was provided with the smallest sizes available. Keefer Depo. at 25–27. It was suggested that she have the brace altered, but she never did so. Keefer Depo. at 27–28. She was also advised to wear two pairs of gloves, which she did. Keefer Depo. at 26.

■ Plaintiff has not explained how she was treated differently than similarly situated males. Although it must be accepted that her gloves and back brace did not fit her well, the record also demonstrates that curative measures were employed or suggested. Moreover, it does not appear that Defendant failed to provide equipment that did fit; the record demonstrates Defendant supplied the smallest sizes available. Defendant also suggested means to accommodate Plaintiff's difficulties. The absence of any evidence that these events were motivated by a desire to discriminate, coupled with Plaintiff's failure to defend this aspect of her claim in opposing Defendant's Motion for Summary Judgment, persuades the Court that Plaintiff's "equipment claim" should not proceed.[5]

■ Plaintiff's failure to promote claim may be presented to a jury. The Court concedes that there is much evidence to support Defendant's position: Plaintiff was motivated to apply for a position based on knowledge that a "tagger" position was open, she stated she wanted a job outside,

4. It should be noted that Defendant's arguments do not apply with respect to Plaintiff's claim under state law. Under state law, an employer is strictly liable for acts of harassment, regardless of whether the victim complains and regardless of whether the employer takes post-harassment action to respond to the harassment. *Pollock v. Wetterau Food Distribution Group*, No. 74309, slip op. at 8–9 (Mo.Ct.App. Aug.17, 1999). Even if the Court were to grant summary judgment with respect to Plaintiff's Title VII claims the Court would exercise its discretion to allow Plaintiff's sexual harassment claim under the Missouri Human Rights Act to proceed instead of dismissing the case so it could be refiled in state court.

5. In making this decision, the Court rejects Defendant's argument that failure to provide equipment is a mere inconvenience that cannot constitute discriminatory treatment. "Adverse employment action is that which materially alters the terms or conditions of the plaintiff's employment," and on this basis the Court of Appeals has held, for instance, that the failure to provide an employee with a computer cannot be discriminatory because the decision whether to "give ... technicians specific pieces of equipment is a business decision that is not susceptible to judicial oversight." *Enowmbitang v. Seagate Technology, Inc.*, 148 F.3d 970, 973 (8th Cir.1998). *Enowmbitang* was based in part on *Ledergerber v. Stangler*, 122 F.3d 1142 (8th Cir.1997), which stated in part that "[c]hanges in duties or working conditions that cause no materially significant disadvantage ... are insufficient to establish the adverse conduct required to make a prima facie case." 122 F.3d at 1144 (quotation omitted). The outright failure to provide admittedly required safety equipment would create materially significant disadvantage and place the employee in the position of deciding whether to refrain from performing his or her duties or from performing those duties at the risk of life or limb. Providing equipment that is not functional (because of disrepair or because it is ill-fitting) would be no different. However, as stated in the text, Plaintiff was not presented with this Hobson's choice, nor is there evidence that Defendant was motivated by gender discrimination in this regard.

and never specifically stated that she wanted a forklift job. Although she expressed her desire to be promoted to a forklift position within two months of beginning work, Defendant was not obligated to promote her until a replacement for her position had been found. At the time she quit Plaintiff had been assigned the task of training another employee to be a tagger. However, these are the facts viewed in the light most favorable to Defendant; when viewed in the light most favorable to Plaintiff the Court cannot ignore testimony from other women that Weems told them (1) "there was no need to pursue the forklift position because in his opinion women were not qualified to drive forklifts [and that] women weren't capable of driving forklifts," Whitehead Affidavit, ¶ 3; and (2) he "wouldn't hire a woman for the job because it was too hard for a woman to do." Hipple Depo. at 166. These statements constitute evidence that, if believed, would permit a jury to conclude that Plaintiff was not promoted because she was a woman. Plaintiff's failure to promote claim survives Defendant's Motion for Summary Judgment.

For the foregoing reasons, Defendant's Motion for Summary Judgment is denied. IT IS SO ORDERED.